## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| HPM, INC.<br>9781 S. Meridian Blvd., Suite 120<br>Englewood, Colorado 80112,<br><br>    Plaintiff,<br><br>    v.<br><br>M.C. DEAN, INC.<br>1765 Greensboro Station Place<br>Tysons Corner, Virginia 22102,<br><br>    Serve:  Registered Agent<br>             C T CORPORATION SYSTEM<br>             4701 Cox Road, Suite 285<br>             Glen Allen, Virginia 23060<br><br>    Defendant. | Case No.: _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff HPM, Inc. ("HPM"), through undersigned counsel, hereby files its Complaint and states as follows in support of its Complaint and Jury demand ("Complaint") against Defendant M.C. Dean, Inc. ("MCD", with HPM and MCD referred to individually each as a "Party" and collectively as the "Parties"):

## NATURE OF THE CASE

1.    HPM brings this diversity contract action for damages arising out of MCD's multiple and continuing breaches of the Parties' Firm Fixed Price Completion Subcontract for general construction services ("Subcontract"). A true and correct copy of the Subcontract is attached as Exhibit 1.

2.      MCD hired HPM to perform certain construction and design services related to MCD's design-build Prime Contract No. H98230-19-D0028/0002 ("Prime Contract") to renovate the Alaska Mission Operations Center ("AMOC"), issued by the Federal Government's U.S. Army Corps of Engineers' Maryland Procurement Office ("Government").

3.      HPM's claims against MCD involve three primary issues:

   a.   Throughout the course of the subject project, MCD failed to supply enough escorts for HPM to perform its scope of work in accordance with the project schedule, significantly delaying the project and increasing HPM's expenses;

   b.   MCD failed to compensate HPM for changes to the access doors required by the Government in the middle of the project; and

   c.   MCD has unreasonably and unjustifiably denied proposed change orders HPM submitted for additional expenses and time incurred and additional work HPM performed on the project.

## PARTIES

4.      Plaintiff HPM is a Delaware corporation with its principal place of business located at 9781 S. Meridian Blvd, Suite 120, Englewood, Colorado 80112.

5.      Defendant M.C. Dean, Inc. is a Virginia corporation with its principal place of business located at 1765 Greensboro Station Place, Tysons Corner, Virginia 22102.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the amount of $75,000 and there is a complete diversity of parties.

7.      Venue of this action in the Eastern District of Virginia - Alexandria Division is proper pursuant to the Choice of Law and Venue provision contained in HPM's Subcontract.

8.      Additionally, MCD's principal office is in Tysons Corner, Virginia, as such the Alexandria judicial district division makes this Court the proper Venue pursuant to § 28 U.S.C. § 1391(b)(1).

## GENERAL ALLEGATIONS

9.      On September 25, 2022, the Government awarded MCD a Prime Contract to perform design-build services for the AMOC renovation project located on Joint Base Elmendorf—Richardson ("JBER") in Anchorage, Alaska ("Project").

10.      Under the Prime Contract, MCD agreed to perform construction renovation services to three different buildings: (a) Building 18220; (b) Building 18216; and (c) Building 18224.

11.      Most of the construction services under the Prime Contract were to be performed in Building 18220; however, the other identified buildings did require some demolition and utility installation work.

**Building 18220 Renovation**

12.      Building 18220 is a four-story, 105,000 square foot facility, originally constructed in 1954.

13.      Under the Prime Contract, Building 18220 required a complete slab-to-slab renovation—modernizing architectural finishes, restructuring and refreshing supporting utilities, updating code requirements, and increasing operational reliability.

14.      More specifically, the Administration Wing of the building required reconfiguration to meet current occupational requirements and applicable standards and a design that promoted workplace collaboration and flexibility.

15.     Further, the Operations Wing required architectural and mechanical/electrical upgrades to the basement and second floor.

16.     The first floor contains a Network Operations Center, which has been recently renovated under a separate project.

17.     MCD's scope of work also included providing access throughout the contiguous secure areas between all floors that were accredited secure controlled work areas ("SCIF's") for the storage, accessibility and maintenance of secured materials.

18.     The Prime Contract required MCD to maintain accreditation for SCIFs during and after the renovation, adjust the SCIF perimeter to accommodate proposed changes in occupancy, and provide workspace for uncleared personnel and unclassified briefings on the first floor of the Administration Wing.

19.     MCD was also required to phase construction so as not to disrupt ongoing Government operations and to minimize impacts to occupancy health and safety.

**MCD Subcontracts Certain Work to HPM**

20.     On November 16, 2020, MCD subcontracted some of the design obligations and the majority of its construction obligations under the Prime Contract to HPM under HPM's Subcontract (Ex. 1).

21.     HPM agreed to do all work under the Subcontract for a lump-sum of $30,243,520.00 with an original period of performance through September 19, 2023, per the baseline schedule prepared by MCD.

**MCD's Failure to Provide Enough Escorts**

22.     Under the Subcontract, HPM was required to comply with extensive project security requirements (as was MCD).

23.     All personnel who did not have the requisite government clearances were required to be escorted at all times while on the Project site.

24.     Almost all construction activities for the Project were required to be performed under the supervision of escorts.

25.     Under its Subcontract with MCD, HPM was not responsible for providing escorts for monitoring the work and escorting personnel.

26.     MCD routinely failed to provide enough escorts for HPM and its subcontractors to perform their work in accordance with the approved baseline schedule.

27.     The lack of escorts significantly delayed and disrupted HPM's work, extended the duration of the Project, and reduced HPM's productivity, thereby costing HPM more time and money.

28.     In November 2022, after the Subcontract was executed, the Government changed the Contractors Security Plan (CSP) and implemented a new requirement that all escorts maintain "line of sight" coverage for contractors – meaning that the approved escorts had to be in constant view of the contractor personnel performing work.

29.     The new CSP was more stringent than the CSP in place when HPM executed the Subcontract, and it required MCD to provide even more escorts to oversee the work - exacerbating the already insufficient supply of escorts.

30.     HPM put MCD on notice of the lack of escorts numerous times through serial letters, emails, weekly status updates, and daily reports.

31.     Despite HPM's numerous requests for MCD to remedy the situation, MCD failed to correct the problem.

32.     During MCD's escort shortage, HPM worked diligently to mitigate impacts to the Project schedule and HPM's Subcontract.

33.     On April 26, 2024, HPM sent MCD a change order request for the delays and impacts caused by the lack of escorts.

34.     The change order request provided extensive documentation of the delays, loss of productivity and cost impacts caused by the lack of escorts including a detailed time impact analysis.

35.     The time impact analysis showed that HPM successfully mitigated 15 working days of delay but still incurred 136 working days of delay due to the lack of escorts.

36.     MCD is liable to HPM for at least 121 days of delay and the added costs HPM incurred as a result of the lack of escorts.

37.     MCD has refused to recognize the impacts of escort shortages to HPM and has failed grant HPM's proposed change order.

**MCD's Failure to Pay HPM for Additional Door Hardware and Associated Impacts**

38.     On April 1, 2022, in the middle of ongoing construction, the Government directed MCD to install additional door operators and door assists not required in the original scope of work for the Project.

39.     MCD subsequently directed HPM to proceed in accordance with the Government's direction.

40.     On April 11, 2022, HPM notified MCD that HPM considered the Government's direction to be a change to the contract requirements (as it was not within the Subcontract scope of work), which entitled HPM to additional compensation for the time and cost impacts and extra work.

41.     HPM's notice also informed MCD the Government's changes to the door hardware caused a significant delay in ordering the door frames.

42.     The door frames could not be ordered until a revised hardware submittal was approved because the frames could not be fabricated until the hardware requirements were defined and accepted by MCD and the Government.

43.     On November 11, 2022, HPM further notified MCD it could not complete installation of certain door frames because of separate design discrepancies between the electrical rough-in and the revisions to required door hardware.

44.     MCD and its other subcontractors—not HPM—were responsible for matching and coordinating the electrical rough-in with the Government's changes to the door hardware.

45.     On information and belief, MCD failed to account for these changes when coordinating the electrical scope of work.

46.     HPM informed MCD that it would provide pricing for the additional delays and costs once the revised drawings were fully and properly coordinated by MCD and its other subcontractors.

47.     On April 26, 2024, HPM sent MCD a change order request for the delays and impacts caused by the Government's changes to the Project's doors and the design discrepancies.

48.     The change order request provided extensive documentation of the delays, loss of efficiency and cost impacts caused by changes to the doors and design discrepancies including a detailed time impact analysis.

49.     The time impact analysis showed that HPM successfully mitigated 21 working days of delay but HPM still incurred 131 working days of delay due to the door changes and

design discrepancies. These delays are over and above the other delays set forth elsewhere herein.

50.     MCD is liable to HPM for 110 days of delay and the added costs HPM incurred as a result of the changes to the doors and design discrepancies.

51.     MCD has refused to recognize the impacts of door changes to HPM and has failed grant HPM's proposed change order.

**HPM Has Incurred Significant Damages**

52.     To date, and despite repeated demands and timely notices, MCD has failed and refused to pay HPM for the delay damages, added costs, and change orders related to the Project.

53.     On information and belief, MCD has also failed to submit requests for equitable adjustment to the Government on HPM's behalf.

54.     As a direct and proximate result of MCD's acts and/or failures to act, HPM has incurred damages in excess of $4.8 million.

55.     MCD's refusal to pay HPM constitutes a material breach of the parties' Subcontract.

**<u>FIRST CLAIM FOR RELIEF</u>**
**<u>(Breach of Contract)</u>**

56.     HPM restates and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     The Subcontract constitutes a valid and binding contract between HPM and MCD.

58.     HPM fully performed all its obligations under the Subcontract.

59.     MCD breached its duties under the contract when it, among other things:

    a.   Failed to provide adequate and sufficient escorts;

    b.   Impacted, delayed, and interfered in HPM's work;

     c.    Failed to approve proper change orders/pending change orders;

     d.    Compensate HPM for additional expenses it incurred as a result of the lack of escorts to monitor HPM's activities; and

     e.    Compensate HPM for additional expenses it incurred as a result of changes to the Project's door supply scope of work.

60.    As a result of MCD's material breaches of the Subcontract, HPM has incurred and continues to incur damages in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

61.    HPM restates and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

62.    The Subcontract constitutes a valid and binding contract between HPM and MCD.

63.    Every contract, including the Subcontract, contains an implied duty of good faith and fair dealing.

64.    Under the Subcontract, MCD retained discretion to approve or deny proposed change orders submitted by HPM.

65.    MCD improperly denied proposed change orders submitted by HPM without justification.

66.    MCD's denial of proposed change orders breached the implied covenant of good faith and fair dealing and constitutes a material breach of the Subcontract.

67.    As a direct and proximate result of MCD's bad faith, HPM has incurred and continues to incur damages in an amount to be proved at trial.

**REQUEST FOR RELIEF**

HPM respectfully request the following relief:

A.     That judgment be entered in its favor and against MCD for all damages to which HPM is entitled under the Subcontract in the amount of at least $4,800,000.00;

B.     An award for costs and attorneys' fees, as allowed by law;

C.     Pre- and post-judgment interest, inclusive of Prompt Payment Act Interest per 48 C.F.R. § 52.232-27; and

D.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HPM demands a trial by jury on all issues so triable.

Dated:  June 20, 2024

Respectfully submitted,

COZEN O'CONNOR

By: /s/ Lawrence M. Prosen
Lawrence M. Prosen (91771)
Stephen M. Seeger (40548)
1200 19th Street, NW, Suite 300
Washington, DC 20036
*Tel*: (202) 304-1449
*Fax*: (202) 400-2715
lprosen@cozen.com
sseeger@cozen.com

*Of Counsel:*

David Frommell
Bryce Martinez
BELTZER BANGERT AND GUNNELL LLP
5420 S. Quebec Street, Suite 103
Greenwood Village, CO 90067
*Tel*: (303) 325-1238
david@bbglaw.com
bmartinez@bbglaw.com