IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| HPM, INC.,<br>     *Plaintiff*,<br><br>   v.<br><br>M.C. DEAN, INC., *et al.*,<br>     *Defendants*. | No. 1:24-cv-01078-MSN-IDD |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant M.C. Dean's ("MCD") Motion to Dismiss (ECF 59) and Defendants Liberty Mutual Insurance Company's and Arch Insurance Company's (collectively, the "Surety Defendants") Motion to Dismiss (ECF 61). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with Plaintiff HPM, Inc.'s Third Amended Complaint (ECF 53) ("TAC"), the Court grants in part and denies in part MCD's Motion and denies the Surety Defendants' Motion for the reasons that follow.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff HPM, Inc. ("HPM") brings this action based on Defendant MCD's alleged breaches of the parties' Firm Fixed Price Completion Subcontract for general construction services (the "Subcontract"). ECF 53 ¶ 1; ECF 53-1. MCD hired HPM to assist it with design and construction services related to MCD's Prime Contract (the "Prime Contract") to renovate the Alaska Mission Operations Center (the "AMOC") for the federal government. *Id.* ¶ 2. In sum,

---

[1] The Court accepts all facts contained within the TAC as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

HPM alleges that MCD failed to supply enough security escorts for HPM to perform its scope of work within the project schedule and that MCD failed to compensate HPM for changes to access doors required by the government. *Id.* ¶ 3.

MCD alleges that, on September 25, 2020, the federal government awarded MCD a Prime Contract to design and perform renovations on the AMOC (the "Project"), which is located on Joint Base Elmendorf-Richardson ("JBER") in Anchorage, Alaska. *Id.* ¶ 14. Under the Prime Contract, MCD agreed to perform construction renovations to three different buildings. *Id.* ¶ 15. Because the renovations were to be performed on federal buildings, HPM asserts that the Project involved "public buildings" or "public works" of the United States within the meaning of the Miller Act and pursuant to 40 U.S.C. § 3301(a)(5).

Most of the construction services under the Prime Contract were to be performed on Building 18220. *Id.* ¶ 16. Building 18220 is a four-story, 105,000 square foot facility, which was originally constructed in 1954. *Id.* ¶ 18. Because of the nature of AMOC's work, the Building contains accredited secure controlled work areas ("SCIFs") for the storage, accessibility, and maintenance of secured materials. *Id.* ¶ 23. The Prime Contract called for a complete slab-to-slab renovation of the building, including modernizing architectural finishes, restructuring and refreshing utilities, updating code requirements, and increasing reliability. *Id.* ¶ 19. The Prime Contract also required MCD to maintain accreditation for SCIFs during and after the renovation and ensure that government employees had ongoing access to these areas. *Id.* ¶¶ 23-24.

On November 16, 2020, MCD contracted some of the design obligations and the majority of the construction obligations under the Prime Contract to HPM under HPM's Subcontract. *Id.* ¶ 26. HPM agreed to do the work for a lump sum of $30,243,520, with a period of performance through September 19, 2023. *Id.* ¶ 27.

2

The Subcontract provides that MCD could make changes to the scope of work at any time before its completion by submitting written notice to HPM. ECF 53-1 at 9 § 6.6. If such changes caused "a material increase or decrease in the estimated cost of, or the time required for the performance of any part of the work" under the Subcontract, HPM could notify MCD in writing "within twenty (20) days" and request an equitable adjustment "in the estimated cost, delivery schedule or amount of any fixed fee." *Id.* If HPM properly notified MCD of a change in cost or time to complete performance, the Subcontract states that MCD "shall make an equitable adjustment." *Id.* A failure of the parties to agree to any adjustment constitutes a dispute under the Subcontract, which the parties agreed to "negotiate in good faith" before resorting to litigation. ECF 53-1 § 6.7.

In addition, Section IV(g) of Attachment I to the Subcontract required HPM to comply with extensive Project security requirements. ECF 53 ¶ 28; ECF 53-1 at 22. All HPM personnel who did not have the requisite security clearances were required to be escorted at all times while working on the Project. ECF 53 ¶ 29. Under Attachment I to the Subcontract § III(l), MCD—not HPM—was responsible for providing escorts. *Id.* ¶ 31; ECF 53-1 at 21.[2]

HPM asserts that "MCD routinely failed to provide enough escorts for HPM and its subcontractors to perform their work in accordance with the approved baseline schedule." *Id.* ¶ 32. The "lack of escorts significantly delayed and disrupted HPM's work, extended the duration of the Project, and reduced HPM's productivity, thereby costing HPM more time and money." *Id.* ¶ 33.

In November 2022, after the Subcontract was executed, the government changed the Contractors Security Plan ("CSP") and implemented a new requirement that all escorts maintain "line of sight" coverage for contractors. *Id.* ¶ 34. The new CSP required MCD to provide even

---

[2] Unless otherwise indicated, page numbers refer to the CM/ECF ascribed page numbers.

more escorts to oversee HPM's work, exacerbating the escort shortage. *Id.* ¶ 35. HPM put MCD on notice of the lack of escorts numerous times through letters, emails, weekly status updates, and daily reports, and yet MCD failed to correct the problem. *Id.* ¶¶ 36-37.

On April 26, 2024, HPM sent MCD a change order request for the delays it claimed to have been caused by the lack of escorts. *Id.* ¶ 39. HPM asserts that it successfully mitigated 15 working days of delay but still incurred 136 working days of delay due to the lack of escorts. *Id.* ¶ 41. MCD refused to grant the proposed change order to pass HPM's claims on to the government for consideration as an equitable adjustment to the contracts. *Id.* ¶¶ 43-44.

HPM also asserts that, on April 1, 2022, the government directed MCD to install additional door operators and door assists not required in the original scope of work for the Project. *Id.* ¶ 45. MCD directed HPM to proceed with such installation. *Id.* ¶ 46.

On April 11, 2022, HPM notified MCD that HPM considered the request to be a change in the contract requirements and that HPM was entitled to additional compensation. *Id.* ¶ 47. HPM also informed MCD that the change caused a delay in ordering the door frames because the frames could not be ordered until a revised hardware submittal was approved. *Id.* ¶¶ 48-49.

HPM later ran into additional problems related to the changed door requirements. On November 11, 2022, HPM alerted MCD that it could not complete the installation of certain doors because of design discrepancies between the electrical rough-in and the revisions to the door hardware. *Id.* ¶ 50. HPM asserts that MCD, and its other subcontractors, were responsible for matching and coordinating the electrical rough-in with the door hardware. *Id.* ¶ 51. HPM believes that MCD failed to account for these changes when coordinating the electrical scope of work. *Id.* ¶ 52. HPM informed MCD that it would provide pricing for the additional delays and costs once the revised drawings were coordinated. *Id.* ¶ 53.

On April 26, 2024, HPM sent MCD a change order request for the delays alleged to have been caused by the changes to the doors. *Id.* ¶ 54. HPM asserts that it successfully mitigated 21 working days of delay but that it still incurred 131 working days of delay due to the door changes. *Id.* ¶ 56. MCD refused to grant the change order. *Id.* ¶ 58.

All told, HPM claims that the delays caused by the lack of escorts and changes to the doors led it to incur $3.3 million in damages and that MCD's refusal to pay constitutes a breach of the Subcontract. *Id.* ¶ 64.

HPM further asserts that MCD and the Surety Defendants executed Payment Bonds dated September 10, 2020, in the overall penal sum of $53,992,447 (the "Bond") as part of MCD's obligations under the Miller Act. *Id.* ¶ 65; ECF 53-2. MCD obtained the Bond to secure its payment obligations to certain subcontractors, including HPM. *Id.* ¶ 66. HPM asserts that, under the Bond, MCD and the Surety Defendants are jointly and severally liable for any breach of the Subcontract. *Id.* ¶ 67. Thus, HPM seeks damages from the Surety Defendants, jointly and severally, under the Miller Act and the Bonds, because MCD has failed to pay HPM for the full amount of labor it has performed. *Id.* ¶ 69.

## B.    Procedural Background

On June 20, 2024, Plaintiff filed a Complaint against MCD for breach of contract and breach of the covenant of good faith and fair dealing. ECF 1. Plaintiff amended its Complaint on October 16, 2024. ECF 5. Then on March 19, 2025, Plaintiff filed a Second Amended Complaint against MCD. ECF 11.

MCD responded by filing a motion to dismiss. ECF 23. On December 10, 2025, before the Court ruled on the pending motion to dismiss, HPM filed a motion to amend its complaint again, which Magistrate Judge Ivan D. Davis granted. ECF 41.

On February 6, 2026, HPM filed the TAC, in which it added the Surety Defendants and its claim under the Miller Act. ECF 53. MCD and the Surety Defendants subsequently moved to dismiss. ECF 59, 61. On July 10, 2026, the matter was reassigned *sua sponte* to the undersigned.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. In considering a Rule 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may prevail on a Rule 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a plaintiff may mount a factual challenge to subject matter jurisdiction by arguing "that the jurisdictional allegations of the complaint are not true." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (cleaned up). In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," and the Court may consider extrinsic evidence. *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

### B.    Rule 12(b)(6)

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When

reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.   ANALYSIS

Defendants make four arguments in support of dismissing the TAC: (1) the Court lacks subject matter jurisdiction because HPM has not alleged the occurrence of conditions precedent; (2) the breach of contract claim fails to identify a contractual provision that MCD breached and fails to allege facts giving rise to a contractual duty; (3) Virginia does not provide for a standalone breach of covenant of good faith and fair dealing claim and, even if it did, there are not allegations supporting a claim of bad faith; and (4) the Miller Act claim should be dismissed because there was no breach of contract. ECF 59-1 at 1-2; *see also* ECF 63 at 2. The Court addresses each argument below.

### A.   Condition Precedent

First, MCD argues that the Court lacks subject matter jurisdiction over this action because HPM failed to plead a condition precedent under the Subcontract.

"A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon . . . ." *Smith v. McGregor*, 376 S.E.2d

60, 65 (Va. 1989). The general rule regarding pleading conditions precedent is that "[a] party seeking to recover on a contract right *must allege and prove* performance of any express conditions precedent upon which his right of recovery depends." *Lerner v. Gudelsky Co.*, 334 S.E.2d 579, 584 (Va. 1985) (emphasis added).

Failure to expressly plead performance of a condition precedent, however, does not deprive the Court of subject matter jurisdiction over a claim.[3] *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, No. 3:13cv442, 2013 WL 5962939, at *3 (E.D. Va. Nov. 6, 2013) ("A plaintiff's failure to comply with the terms of a contract prior to bringing suit may affect the *plaintiff's* ability to bring the suit, but it does not affect whether the *district court* possesses the power to hear the case." (emphasis in original)). Indeed, as the Supreme Court has recognized, a contractual provision "does not reduce the adjudicatory domain of a tribunal." *Union Pac. R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81-82 (2009) (citations omitted). A plaintiff's failure to plead a condition precedent instead raises a question of whether a plaintiff has adequately stated a claim under Rule 12(b)(6). *See Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 514, 518-19 (E.D. Va. 2014).

Here, Section 6.6 of the Subcontract provides that, where HPM seeks an equitable adjustment, HPM must notify MCD "in writing of any request for such adjustment *within twenty (20) days* from the date of such notice from [MCD] or from the date of any act of [MCD] which [HPM] considers constituting a change." ECF 53-1 at 9 § 6.6 (emphasis added). HPM's timely notice to MCD that it planned to seek an equitable adjustment is therefore a condition precedent

---

[3] MCD correctly notes that a district judge in this District has granted a Rule 12(b)(1) motion based on a failure to allege a condition precedent. But that decision did not expressly rely on a finding that the court lacked subject matter jurisdiction. *See Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651-52 (E.D. Va. 2010) (granting a Rule 12(b)(1) motion but not explicitly finding that the court lacked subject matter jurisdiction).

to HPM's receipt of that adjustment.[4] *Id.*; *see also Dewberry-Goodkind, Inc. v. Edgewood Props., Inc.*, No. 1:10cv118, 2010 WL 11699618, at *3-4 (E.D. Va. July 23, 2010) (concluding that a similar notice provision required a plaintiff to plead adequate notice before seeking remedies under the contract).

Not all of HPM's breach of contract claims in Count I, however, implicate the condition precedent in Section 6.6 of the Subcontract. The TAC raises five theories under which MCD allegedly breached the Subcontract: (a) MCD failed to provide adequate and sufficient escorts; (b) it impacted, delayed, and interfered with HPM's work; (c) it failed to approve change orders/pending change orders in violation of Subcontract §§ 6.6 and 6.7; (d) it failed to compensate HPM for additional expenses it incurred as a result of the lack of escorts in violation of Subcontract §§ 6.6 and 6.7; and (e) it failed to compensate HPM for additional expenses it incurred as a result of the changes to the Project's door supply scope of work in violation of Subcontract §§ 6.6 and 6.7. ECF 53 ¶ 77.

The timely notice provision only applies to MCD's duty to make equitable adjustments under Section 6.6 of the Subcontract. In paragraphs 77(a) and 77(b) of the TAC, HPM alleges that MCD failed to provide sufficient escorts and that MCD "[i]mpacted, delayed, and interfered in HPM's work." ECF 53 ¶ 77(a)-(b). Because these claims do not involve MCD's failure to provide extra compensation under Section 6.6 of the Subcontract, they are not subject to the notice requirement. By contrast, the condition precedent *does* apply to Plaintiff's breach of contract claims in paragraphs 77(c), 77(d), and 77(e) of Count One because those claims contest MCD's

---

[4] MCD also argues that HPM fails to allege a second condition precedent to the institution of this suit—a failure to negotiate as required by Section 6.7 of the Subcontract. ECF 59-1 at 5. But HPM alleges that it made a request for adjustment and that MCD refused. ECF 53 ¶¶ 39, 43, 54, 58. Because HPM is not required to negotiate against itself, the Court concludes that HPM has adequately alleged that it satisfied this condition.

failure approve change orders and extra compensation under Section 6.6 as a result of the lack of escorts and changes to the Project's door requirements.

The question thus becomes whether HPM has adequately alleged that it gave MCD timely notice under Section 6.6 that it planned to seek equitable adjustments related to the escort and door issues.

HPM has not alleged that it gave MCD proper notice that it planned to seek an equitable adjustment based on MCD's failure to provide sufficient escorts. HPM generally asserts that "HPM put MCD on notice of the lack of escorts numerous times through serial letters, emails, weekly status updates, and daily reports." ECF 53 ¶ 36. But the only specific dates that HPM alleges are the government's November 2022 change to the number of required escorts and HPM's April 2024 change order request. *Id.* ¶¶ 34, 39. Although HPM is correct that courts have set a low bar for pleading compliance with a condition precedent, *see U.S. ex rel. Aarow/IET LLC v. Hartford Fire Ins. Co.*, 838 F. App'x 736, 744 (4th Cir. 2020) (noting that, in pleading conditions precedent, a plaintiff need only allege that it "satisfied all conditions precedent"), HPM has not alleged that it provided notice to MCD about the lack of escorts within _twenty days_ as required by the Subcontract nor does HPM allege more generally that it satisfied all conditions precedent. The Court must therefore dismiss HPM's claims in paragraph 77(c) and (d) that MCD breached the Subcontract by failing to compensate HPM for additional expenses and approve change orders related to the lack of escorts.

The result is different for HPM's claims related to the Project doors. HPM alleges that MCD directed it to install additional door operators and assists sometime on or after April 1, 2022. *Id.* ¶¶ 45-46. HPM also alleges that it promptly notified MCD on April 11, 2022, that it considered the instruction to be a change in the scope of work, requiring more work on HPM's part and

entitling it to additional compensation. *Id.* ¶ 47. HPM has therefore has properly pled that it satisfied the notice requirement with respect to its claims in paragraphs 77(c) and (e) that MCD breached the Subcontract by refusing to issue a change order and additional compensation after it modified the Project's door requirements. *See id.* ¶ 77(c), (e).

### B.    Breach of Contract

In addition to pleading compliance with conditions precedent, HPM must *plausibly* allege each of its breach of contract claims. *Twombly*, 550 U.S. at 556. To plead a breach of contract under Virginia law, a plaintiff must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *White v. Trans Union LLC*, 1:24-cv-324, 2025 WL 409660, at *4 (E.D. Va. Feb. 5, 2025) (citing *NAC Consulting, LLC v. 3Advance, LLC*, 650 F. Supp. 3d 441, 447 (E.D. Va. 2023)).

HPM's remaining breach of contract claims are that MCD (1) failed to provide adequate escorts; (2) interfered with HPM's work; (3) failed to approve proper change orders for additional work HPM was forced to complete as a result of changes to the Project's doors; and (4) failed to compensate HPM for additional expenses it incurred as a result of changes to the Project's doors. ECF 53 ¶ 77(a)-(c). The Court addresses claim each in turn.

*First*, with respect to the failure to provide adequate escorts, HPM alleges that MCD breached Attachment I, § III(l) of the Subcontract. ECF 53 ¶ 77(a). Attachment I, § III(l) of the Subcontract excludes from HPM's responsibilities "Escorts for Site Security." ECF 53-1 at 21. In Reply, MCD essentially concedes that HPM has stated a breach of contract claim in this regard. ECF 65 at 7 ("MCD does not contend that HPM failed to plead facts alleging escort shortages . . . ."). Additionally, neither the Memoranda in Support nor the Reply substantively

address this alleged breach. *See generally* ECF Nos. 59-1, 65. In short, HPM has stated a breach of contract where HPM alleges: (i) MCD had a contractual duty to provide escorts; (ii) MCD failed to provide sufficient escorts; and (iii) HPM was damaged by that failure through the increased time and money it was forced to spend on the Project. ECF 53 ¶¶ 31-33, 37, 41, 77(a).

*Second*, HPM alleges that MCD impacted, delayed, and interfered with HPM's work. *Id.* ¶ 77(b). HPM, however, concedes that this alleged breach does not identify a specific provision of the Subcontract that MCD breached. ECF 72 at 9. By failing to identify a duty that MCD breached, HPM fails to state a claim. *See Wright v. Capital One Bank (USA), N.A.*, No. 1:21-cv-803, 2024 WL 920057, at *5 (E.D. Va. Mar. 4, 2024). HPM attempts to remedy this deficiency in its Opposition by arguing that paragraph 77(b) incorporates all prior paragraphs and is intended to allege a breach of contract based on the failure to provide escorts as required by Attachment I, § III(l). ECF 62 at 9-10. But HPM has already alleged this same breach of Attachment I, § III(l) in paragraph 77(a). Thus, paragraph 77(b) asserts the same breach of the same contractual provision and the same damages—all premised on the failure to provide adequate escorts—as asserted in paragraph 77(a). Such duplicative claims for a breach of contract are properly dismissed. *See Heravi v. Gaming Network Sols., LLC*, No. PWG-15-1178, 2016 WL 3753156, at *6 (D. Md. July 13, 2016).

*Finally*, HPM claims that MCD breached Section 6.6 of the Subcontract by failing to approve change orders and compensate HPM for additional work incurred as a result of changes to the Project's doors. ECF 53 ¶ 77(c)(e). Section 6.6 of the Subcontract makes clear that if MCD makes changes to the "design[] or specifications" of the Project and HPM gives MCD timely notice that such changes will result in additional time or expense, then MCD "shall make an equitable adjustment in the estimated cost, delivery schedule, or amount of any fixed fee and shall modify

the Agreement." ECF 53-1 at 9 § 6.6. The change in the required door hardware was undoubtedly a change to Project's design or specification. And HPM has alleged that, after MCD received notice that HPM believed it was entitled to additional compensation to address this change, MCD refused to make a change to the Subcontract and refused to compensate HPM for those additional costs. ECF 53 ¶¶ 54, 58. These allegations are sufficient at this stage to allege a breach of Subcontract Section 6.6.

In sum, the Court will dismiss HPM's breach of contract claims in paragraphs 77(b) and (d). The Court will also dismiss HPM's breach of contract claim in paragraph 77(c) as it relates to MCD's failure to provide sufficient escorts. The Court, however, will deny MCD's Motion to Dismiss HPM's breach of contract claims in paragraphs 77(a) and (e). Finally, the Court will deny MCD's Motion to Dismiss HPM's breach of contract claim in paragraph 77(c) as that claim relates to MCD's failure to make changes to the Subcontract to reflect the changes to the Project's door requirements.

### C.      Breach of the Covenant of Good Faith and Fair Dealing

"In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x 336, 345 (4th Cir. 2013). But the implied covenant does not "simply duplicate[] a claim for an express breach of the contract." *Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*, 144 F.4th 238, 252 (4th Cir. 2025). Rather, to bring a claim under the implied covenant, a plaintiff must show that a defendant exercised its contractual rights "dishonestly or in bad faith." *Id.*; *see also Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (explaining that the implied covenant does not give rise to a claim where a "defendant's exercise of rights specifically afforded to it under the contract" is arbitrary but not dishonest).

13

HPM has not adequately alleged that MCD acted in bad faith in exercising its contractual rights. The TAC claims only that MCD "improperly denied" HPM's proposed change orders to the Subcontract "without justification." ECF 53 ¶ 82. In other words, the TAC alleges that MCD's actions were "arbitrary" or "unfavorable" but not that MCD was "actually dishonest." *Enomoto*, 624 F. Supp. 2d at 450. Accordingly, Count II must be dismissed.

### D.    The Miller Act

"The Miller Act essentially creates a federal breach of contract claim for subcontractors against prime contractors that breach the subcontract where the prime contract is a government contract." *Dickson v. Forney Enters., Inc.*, No. 1:20cv0129, 2021 WL 3563098, at *2 (E.D. Va. July 9, 2021). "[I]f the contract claim[] fail[s], the Miller Act claim fails too." *See, e.g.*, *Level Heating & Air Conditioning Co. v. Patriot Constr., LLC*, No. DLB-20-3154, 2021 WL 5804297, at *3 (D. Md. Dec. 7, 2021). With respect to MCD, the breach of contract claim asserted in paragraph 77(a) survives MCD's Motion to dismiss and, thus, so too does HPM's Miller Act claim predicated on the same conduct.

As for the Surety Defendants, "a surety defending an obligee's claim on [a] bonded obligation stands in the principal's shoes and may assert the defenses available to the principal." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 714 (E.D. Va. 2006). As a result, "the surety on a Miller Act payment bond is liable only to the extent that the general contractor would be liable . . . ." *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 832 (D. Md. 2016); *Am. Sur. Co. v. Wheeling Structural Steel Co.*, 114 F.2d 237, 240 (4th Cir. 1940) ("[C]ertainly the surety is not liable where no liability could be asserted against the principal."). Because the breach alleged in paragraph 77(a) proceeds against MCD, so too does the Miller Act

14

claim against the Surety Defendants. Accordingly, the Surety Defendants' Motion is denied with respect to Count III.

### E.    Leave to Amend

Finally, HPM asks this Court for leave to file a Fourth Amended Complaint to address the deficiencies in its TAC. ECF 62 at 2. While leave to amend should be freely given, *see* Fed. R. Civ. P. 15(a)(2), courts may deny leave to amend where it "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *U.S. ex rel. Nathan v. Takeda Pharm. N.A., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)).

HPM has amended its Complaint three times. More than two years have elapsed since the original Complaint was filed, *see* ECF 1, and HPM received notice of the deficiencies in its case before filing its most recent amended complaint. *See* ECF Nos. 23, 24. "The granting of leave to file another amended complaint . . . would undermine the substantial interest of finality in litigation and unduly subject [Defendants] to the continued time and expense occasioned by [HPM]'s pleading failures." *Nathan*, 707 F.3d at 461 (affirming the denial of leave to amend where plaintiff amended his complaint three times in the two years after filing). The Court will therefore deny further leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that MCD'S Motion to Dismiss (ECF 59) is GRANTED IN PART and DENIED IN PART. MCD's Motion is denied with respect to the breaches of contract alleged in paragraphs 77(a), (c), and (e) of Count I. The Motion is also denied as to Count III. The Motion is granted with respect to the remainder of Count I and Count II; and it is

15

FURTHER ORDERED that the Surety Defendants' Motion to Dismiss (ECF 61) is DENIED; and it is

FURTHER ORDERED that the claims asserted in paragraphs 77(b) and (d) of Count I and Count II are DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND.

**SO ORDERED.**

_____/s/_____
Michael S. Nachmanoff
United States District Judge

July 22, 2026
Alexandria, Virginia

16